UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**NORA JAIMES,**

    **Plaintiff,**

    **v.**                                      Case No. 20-CV-1372

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security[1],**

    **Defendant.**

---

## DECISION AND ORDER

---

Nora Jaimes seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Jaimes challenges the ALJ's failure to determine whether her claims should have been treated as a borderline situation for purposes of determining her age category. On December 2, 2015, Jaimes filed a Title II application for a period of disability and disability insurance benefits. She protectively filed a Title XVI application for supplemental security income on December 10, 2015. In both applications, Jaimes alleged disability beginning September 17,

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner. *See* Fed. R. Civ. P. 25(d).

2015 due to issues with her knees, chronic pain, vertigo, situational depression, and bilateral carpal tunnel syndrome. (Tr. 245.) At the time of her alleged onset date, Jaimes was 46 years old (DOB December 4, 1968). (Tr. 41.) Her applications were denied initially and upon reconsideration. (Tr. 32.) Jaimes filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on June 7, 2018 (Tr. 49–83.) Jaimes testified at the hearing, as well as Joseph Entwisle, a vocational expert. (Tr. 49.)

At the time of the written decision on October 11, 2018, Jaimes was less than two months shy of her fiftieth birthday (December 4, 2018). In his decision, the ALJ found that Jaimes had the severe impairments of degenerative joint disease of the knees, status post knee replacements; carpal tunnel syndrome with status post bilateral releases; degenerative disc disease; asthma; and obesity. (Tr. 35.) The ALJ found that Jaimes did not have an impairment or combination of impairments that met or medically equaled one of the Listings (Tr. 36–37.) The ALJ further found that Jaimes had the RFC to perform sedentary work, with the following limitations: cannot climb ladders, ropes, and scaffolds; cannot kneel or crawl; can occasionally stoop, crouch, and climb ramps and stairs; must avoid exposure to irritants such as fumes, odors, dusts, and gases; and is limited to frequent handling and fingering. (Tr. 37–41.)

The ALJ found Jaimes was unable to perform her past relevant work has a hand packager, kitchen helper, and outdoor deliverer. (Tr. 41.) The ALJ then considered whether Jaimes was disabled based on her RFC, age, education, and work experience, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Chapter 404, Subpart P, Appendix 2, otherwise known as "the Grid." The ALJ determined that on her onset date, Jaimes was 46 years old, which is considered a "younger individual" under 20 C.F.R. 404.1563. (*Id.*) The

ALJ also determined that Jaimes had a limited education and was able to communicate in English. (Tr. 42.) The ALJ did not determine the transferability of job skills, however, because for a "younger individual," the Grid supported a finding of "not disabled" regardless of whether Jaimes had transferable job skills. (*Id.*)

The ALJ found that if Jaimes could perform the full range of sedentary work, she would be considered "not disabled" under the Grid. (*Id.*) Because, however, Jaimes had further limitations eroding the unskilled sedentary occupational base, the ALJ consulted with a vocational expert to determine whether there would be jobs available in the national economy that Jaimes could perform. (*Id.*) The VE testified that Jaimes could perform the occupations of general office clerk, receptionist, and credit checker. (*Id.*) Because there were jobs Jaimes could perform given her age, education, work experience, and RFC, the ALJ found that Jaimes was not disabled from September 17, 2015, through the date of the decision. (Tr. 43.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Jaimes' request for review. (Tr. 21–25.)

## DISCUSSION

### 1. *Applicable Legal Standards*

#### 1.1 Standard of Review

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence,

remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 1.2 Determination of Age Category

Under 20 C.F.R. § 404.1563(a), an ALJ deciding whether an individual is disabled will consider the person's age in conjunction with the person's RFC, education, and work experience. The SSA also "consider[s] advancing age to be an increasingly limiting factor in the person's ability to adjust to other work." *Id.* To account for the increasing significance of age, the SSA uses three categories: "younger person" (below age 50); "person closely approaching advanced age" (age 50–54); and "person of advanced age" (age 55 or older). *Id.* § 404.1563(c)–(e). For a younger person, the SSA "generally [does] not consider that your age will seriously affect your ability to adjust to other work"; however, when a person is closely approaching advanced age, the SSA considers "that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." *Id.* § 404.1563(c)–(d). The regulation also provides, however, that the SSA "will not

4

apply the age categories mechanically in a borderline situation." *Id.* § 404.1563(b). If a person is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that they are disabled, the SSA will consider whether to use the older age category after evaluating the overall impact of all the factors of the case. *Id.*

The SSA's Hearings, Appeals, and Litigation Manual, or "HALLEX," which is the Administration's "policy manual written to convey 'guiding principles, procedural guidance and information to the Office of Hearings and Appeals staff,'" *Cromer v. Apfel*, 234 F.3d 1272, 2000 WL 1544778, at *2 (7th Cir. 2000) (quoting HALLEX, Chapt. I-1-001)), instructs ALJs on how to identify a borderline age situation. HALLEX, I-2-2-42, *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-2-42.html. The HALLEX provides that if applying a claimant's chronological age results in a decision that the claimant is not disabled, then an ALJ will identify whether the claim may involve a borderline age situation by applying a two-part test:

1. Is the claimant's age within a few days or a few months of the next higher age category?
2. Will the higher age category result in a decision of "disabled" instead of "not disabled"?

*Id.* The HALLEX provides that if the answer to both parts of the test is "yes," then a borderline age situation exists and "the ALJ must decide whether it is more appropriate to use the claimant's chronological age or the higher age category." *Id.* In deciding the first part of the test, ALJs "will assess whether the claimant reaches or will reach the next higher age category within a few days to a few months after the: date of adjudication; date last insured;

5

end of disabled widow(er)'s benefit prescribed period; end of child disability re-entitlement period; or date of cessation of disability." *Id.* A "few days to a few months" generally means a period not to exceed six months. *Id.* The HALLEX further explains that ALJs "will not use the higher age category automatically in a borderline age situation," but will consider whether to use the higher category after evaluating the overall impact of all the factors on the claimant's ability to adjust to doing other work. *Id.*

In the SSA's Program Operations Manual System ("POMS"), "a primary source of information used by Social Security employees to process claims for Social Security benefits," *Hoeppner v. Kijakazi*, No. 20-CV-582, 2021 WL 4199336, at *5 (E.D. Wis. Sept. 15, 2021), several factors are listed for ALJs to consider in determining whether to use the next higher age category. DI 25015.006, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015006. These include: how close the claimant is to the next higher age category; education below the high school level; unskilled or no past relevant work; and RFC limitations. *Id.* ALJs are also instructed "not to double-weigh a factor if the medical-vocational rule for the higher age category already incorporates the factor. For example, if the applicable medical-vocational rule for the higher age category already considers illiteracy (such as a younger individual age 44 years and 9 months who has a reduced sedentary residual functional capacity, and the adjudicator is considering applying the higher age category (45-49) medical-vocational rule 201.17), then there would need to be factors other than illiteracy to justify application of the higher age category." HALLEX, I-2-2-42.

Finally, the HALLEX states that "The ALJ will explain in the decision that he or she considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and note the specific factor(s) he or she considered." *Id.*

### 2. *Application to This Case*

Jaimes raises a single argument for reversing the ALJ's decision. She argues that the ALJ committed an error of law by failing to evaluate and consider the application of the Grid category for a person "closely approaching advanced age." She argues that the ALJ mechanically applied 20 C.F.R. § 404.1563 in treating her as a younger person prior to her fiftieth birthday, even though the regulations permitted the ALJ to consider her a person closely approaching advanced age.

The Commissioner does not argue that Jaimes is not in a borderline age situation. (Def.'s Br., Docket # 18.) Rather, she argues that the ALJ did not err in failing to discuss whether he conducted a borderline age analysis and even if he had, none of the factors articulated in the POMS weigh in favor of using the higher age category.

But it is entirely unclear in this case whether a borderline age situation actually exists. At the time of the decision, Jaimes was less than two months shy of her fiftieth birthday, which would have placed her in the next higher age category of "closely approaching advanced age." Thus, she meets the first criteria of a borderline age situation as stated in the HALLEX. However, whether she meets the second criteria for a borderline age situation is unclear.

The ALJ limited Jaimes to sedentary work (Tr. 37) and noted that she has a limited education and is able to communicate in English (Tr. 42). Under the Grids for sedentary work, if a person is a "younger individual" and has limited education and is able to communicate

7

in English, the person is "not disabled" whether his or her past relevant work was unskilled, skilled, or semi-skilled, with or without transferable skills. GRID Rule 201.18–201.20. However, for a person closely approaching advanced age with limited education, the Grid provides that a person with skilled or semi-skilled previous work experience and <u>no</u> transferable skills is disabled, GRID Rule 201.10; whereas the same person <u>with</u> transferable skills is not disabled, GRID Rule 201.11.

Thus, whether Jaimes meets the second criteria of a borderline age situation hinges on this determination of transferability of job skills. But the ALJ did not assess whether Jaimes has transferable job skills, because that analysis is unnecessary when one is a "younger individual." (Tr. 42.) And the ALJ provides no analysis of whether a borderline age situation exists. Because the ALJ neither assessed job transferability nor whether a borderline age situation exists, I cannot review his decision. Transferability is determined by the ALJ in consultation with vocational reference sources. *See* Social Security Ruling 82-41. Perhaps Jaimes is not actually in a borderline age situation. Or perhaps she is disabled under the Grid. I cannot make this determination in the first instance. And given the close proximity of Jaimes' fiftieth birthday to the date of the decision, the ALJ should have considered and analyzed whether a borderline age situation existed. For these reasons, remand is required.

## CONCLUSION

At the time of the ALJ's decision, Jaimes was less than two months shy of her fiftieth birthday. She argues the ALJ erred by failing to consider whether she belonged in the next higher age category of "closely approaching advanced age." I find that a borderline age situation could exist in this case and the ALJ failed to conduct the proper analysis. As such, remand is required.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of February, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge